47 So.3d 958 (2010)
Walter D. MARKHAM, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION, etc., et al., Appellees.
No. 3D09-1985.
District Court of Appeal of Florida, Third District.
November 17, 2010.
Walter D. Markham, in proper person.
M. Elaine Howard, Deputy General Counsel, for Florida Unemployment Appeals Commission.
Before RAMIREZ, C.J., and GERSTEN and SALTER, JJ.
PER CURIAM.
Walter D. Markham appeals the Florida Unemployment Appeals Commission's final order affirming the decision of the Unemployment Compensation Appeals Referee dismissing Markham's appeal as untimely filed. We affirm, as the claimant *959 did not appeal the decision until after the 20-day statutory time limit had expired. See § 443.151(3)(a), Fla. Stat. (2009). Accordingly, the Appeals Referee was legally bound to dismiss the appeal.
Affirmed.
RAMIREZ, C.J., concurring.
I wholeheartedly agree with Judge Salter's opinion. I write only to expand on how Mr. Markham's unemployment benefits were initially denied. According to the Notice of Determination made by a "G.E. Williams," Mr. Markham was denied unemployment benefits because he was "discharged for failure to properly notify the employer of an absence. The claimant's actions were not in the best interests of the employer." Based on this, Mr. Williams concluded that the discharge was for misconduct connected with the work.
Misconduct is defined in section 443.036(29) of the Florida Statutes:
"Misconduct" includes, but is not limited to, the following, which may not be construed in pari materia with each other:
(a) Conduct demonstrating willful or wanton disregard of an employer's interests and found to be a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee; or
(b) Carelessness or negligence to a degree or recurrence that manifests culpability, wrongful intent, or evil design or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his or her employer.
The Unemployment Appeals Commission, ably represented by M. Elaine Howard, refused even to discuss at oral argument how the failure to notify the employer of one absence can ever constitute misconduct. The Commission took the position that its actions and those of the appeals referee were actions that the statutory provisions clearly prescribed. This is an absurdity that flies in the face of any interest in fairness, which ultimately leaves Mr. Markham out of luck. Likewise, it does not matter that Mr. Williams may be laboring under the misimpression that misconduct somehow includes actions that are not "in the best interests of the employer," a standard not found in the statute. Thus, Oak Construction Co., Inc. saved itself the additional unemployment taxes it may have incurred, and can discharge Mr. Markham with impunity. This in the midst of an economic recession and Mr. Markham's inability to receive any assistance from the Agency for Workforce Innovation. We are powerless to redress this grave injustice.
SALTER, J. (concurring).
This is another unemployment compensation benefits case in which the employer wins on a technicality and the former employee is denied even the meager safety net provided by law to cushion the trauma of unemployment. While I am obligated to concur in affirming the Commission's order finding Mr. Markham's appeal untimely, I write to identify a recurring problem that merits attention by the Legislature and the Agency for Workforce Innovation. That problem is the "short fuse" on procedural defaults applicable to appeals to the Agency.
Mr. Markham, like most unemployment compensation claimants, is not an attorney. He is a construction worker. Nevertheless, he represented himself in the preparation of his administrative appeals and in oral argument here. Those efforts deserve to be given further voice.

"Filing" an Administrative Appeal
The procedural trapdoor that catches many unemployed claimants is the twenty-day *960 period for "filing" an appeal from an Agency determination or redetermination denying benefits, found in subsections 443.151(3) and (4), Florida Statutes (2008), and Florida Administrative Code Rules 60BB-5.005 and -5.006.[1] The statutory provisions require the claimant to file his or her appeal "within 20 days after the mailing of the notices to the parties' last known addresses, or in lieu of mailing, within 20 days after delivery of the notices." The Rules specify that "the twenty-day period means twenty calendar days, with the date of issuance of the notice not counted, and the last day is counted unless it is a Saturday, Sunday, or holiday (in which event the period runs until the end of the next day that is not a Saturday, Sunday, or holiday)" (Rule 60BB-5.006(1)). The claimant's appeal is "filed" when postmarked if sent by mail, when received if faxed, and when a confirmation is electronically sent, if filed on line.
In practice, most notices of a determination or redetermination are mailed. The Agency does not use certified mail or return receipts, so independently-confirmed dates of delivery are not available. The Agency relies on the computer-generated "date mailed" on the form of notice, but in this and other cases the Agency has not established a postmark, business practice, or comparable evidence to establish that a notice was actually postmarked (or even placed in a United States Postal Service mail receptacle) on the "date mailed" printed on the notice. The notices are unsigned and bear no certificate of service indicating who placed them into the possession of USPS. Nor do these rules allow any additional appeal period days for the time during which the notice is in transit before it is actually received by the claimant. In Mr. Markham's case, the "date mailed" shown on the notice of determination was Wednesday, November 26, 2008, the day before Thanksgiving. Whether or not the notice was actually postmarked that day, Mr. Markham's actual time to prepare and file his appeal was probably 15 or 16 days rather than 20.

Jurisdictional DeterminationNo "Good Cause" Exception
The appeals to the Agency are administrative rather than judicial. "Good cause" exceptions, and a preference for resolving disputes on the merits rather than technicalities, are recognized in many types of judicial proceedings, but the Agency and Commission have consistently taken the position that an appeal not filed within the twenty day period is subject to dismissal on jurisdictional grounds. See Malary v. Brinker Inter'l Payroll, 898 So.2d 1184 (Fla. 3d DCA 2005).
In this case, the appeals referee asked Mr. Markham whether he actually received the adverse determination letter in the last week of November 2008, and Mr. Markham confirmed that he did. His appeal was indisputably faxed to the Office of Appeals at the Agency on December 22, 2008, making the appeal untimely (under *961 the statute as interpreted, and rules promulgated, by the Agency) even if the actual postmark was a few days after the computer-generated "date mailed" shown on the notice.

Mr. Markham's Reasons for Delay
The appeals referee did not allow the parties to testify regarding the merits of the employer's allegations of misconduct ("failure to properly notify the employer of an absence"). Instead, pursuant to the Agency's Rule 60BB-5.007(2), the timeliness of Mr. Markham's appeal was taken up as the first issue, and his appeal was then dismissed:
The appeals referee shall take evidence on and consider the issue of timeliness of the appeal first. If the referee finds that the appeal was not filed within the time allowed by law, it shall be dismissed. The dismissal decision shall be limited to findings of fact and conclusions of law with respect to the timeliness issue.
Mr. Markham did testify under oath, however, about the problems he had to address in order to get his appeal filed twenty-six days after the "date mailed" on the Agency's computer-generated notice. After Mr. Markham explained his difficulties in understanding the notice, the appeals referee asked him why he didn't visit the Agency for Workforce Innovation for an explanation:
Mr. Markham: It's almost likewhen you go there, ma'am, if you don't know how to use a computer, it's like you're on your own, anywhere in Miami, Florida, you know, they don't have a place that you can just walk in and somebody's going to help you. That's whyit's just like that's why I'm talking to you now. I don't have an office that I can go to and explain to a person face-to-face. Everything is on a computer, and if you don't know how to use a computer, you're illiterate in this world these days. So that's why, you know, I'm behind times. That's what it is. I don't know how to use a computer, and if you go to the Workforce, if you don't know how to use a computer, there ain't nobody going to help you. That's the honest to goodness truth. They don't have time to explain to you how to use the computer.
Appeals Referee: So you're saying at the Workforce there is no one there that can help you
Mr. Markham: They have people there, ma'am, but it's too many people be there. They don't have time to explain to me how to use the computer, you know. I'm on my own. That's why I did it the way I did it the first time, because I didn't know how to use the computer and, you know, you just can't get on something and go and do it and think you're doing it right. You know, it wouldn't be right to do that.
Appeals Referee: Well, there is also a number there, an 800. It says "Call 800-204-2418 with any questions about this claim." Did you try calling that number there, the Workforce
Mr. Markham: You know, like I called numbers and, you know, I just did the best I could, ma'am. I'm just glad that I'm talking to you now because, you know, it takes two or three months to even talk to somebody really, you know, there. You know, you can't catch an MTA bus if you don't have money.

No Prejudice to the Employer or Agency
In this case, there is no indication that the employer or Agency would have been prejudiced in any respect if the appeal period had been thirty days rather than twenty, or if the appeal time ran from actual receipt rather than the computer-generated date on the notice. Indeed, because the initial determination in favor of *962 the employer precluded the payment of any further benefits, Mr. Markham was the party prejudiced by the additional time he used in preparing and filing his appeal.

Conclusion
"Judicial restraint" does not require us to passively watch as unrepresented, unemployed claimants lose their appeals on technicalities.[2] I encourage the Legislature to add additional time to the claimants' appeal period, and I encourage the Agency to promulgate an amended rule that uses the actual postmark date and a signed certificate[3] for the "date mailed" rather than the less reliable and more anonymous computer-generated date on the notice. These modifications may not change the result for Mr. Markham, but they may allow others who follow to reach the merits of their claims. That said, I concur in affirming the Commission's order in this case.
NOTES
[1] The Commission has correctly noted that the same rules apply to employers. The effect, of course, is different. If the Agency denies an award of benefits to a former employee after an initial determination of eligibility, the employer does not pay the benefits (though the employer's unemployment taxes may later increase). The employer still has its business. The employee is newly unemployed and is trying to multi-task his or her way through applications and interviews for a new job, the adverse financial effects of the denial of benefits (which may include eviction or foreclosure, repossession of an automobile, and loss of health insurance), and the mental/emotional aspects of being out of work. The employer appealing a grant of benefits may have available a human resources professional, an attorney, computers to permit on-line filing, and prior experience with the Agency rules. Employee claimants appealing the denial of benefits often have none of these.
[2] For example, a concurring opinion in another District Court case recently encouraged the Legislature to consider amending a different statute. Polanco v. Cordeiro, ___ So.3d ___ (Fla. 2d DCA 2010).
[3] Signed, dated certificates of mailing are used for orders issued by the Office of Appeals and the Commission. Only the first level of administrative determinations and redeterminations by the Agency lack such a certificate and signature.